Lynda A. Bennett (Bar No. 10251995)
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHELBY OWNBEY AND JOYCE OWNBEY, h/w<br><br>Plaintiffs,<br><br>vs.<br><br>AKER KVAERNER PHARMACEUTICALS, INC., R&R SCAFFORDLING, LTD., IMCLONE SYSTEMS, INC., SAFE WORKS, LLC d/b/a POWER CLIMBER and JOHN DOE CORPORATIONS 1, 2 and 3, and JOHN AND JANE DOES 1, 2, 3, 4 and 5<br><br>Defendants. | Case No. 2:07-cv-02190-KSH-PS<br><br>**CERTIFICATION OF LYNDA A. BENNETT, ESQ.** |

LYNDA A. BENNETT, of full age, certifies and states as follows:

1.      I am an attorney at law of the State of New Jersey and a partner at the law firm of Lowenstein Sandler LLP ("Lowenstein").  I chair Lowenstein's Insurance Recovery Group and I am a member of the firm's Board of Directors.  I have practiced as an insurance recovery attorney for 25 years, during which time I have litigated and negotiated complex insurance claims involving a wide array of liabilities, including but not to limited construction claims and additional insured coverage disputes.  A copy of my biography is attached as **Exhibit A**.

2.      I am a member in good standing of the bars of New York and New Jersey.  I am the former Chair of the New Jersey State Bar Association Insurance Law Section and the former President of, and now Strategic Planning Advisor to, the New Jersey Women Lawyers Association.  Since 2013, I have been ranked in Band 1 of the Chambers USA: America's Leading Lawyers for Business: Insurance Litigation.  I am also the recipient of a Professional Lawyer of the Year Award from the New Jersey Commission on Professionalism in the Law.

3.      I have worked at large and mid-sized law firms for the entirety of my career.  My practice is concentrated in complex insurance coverage disputes.  Over the course of my legal career, I have litigated countless insurance coverage actions and recovered hundreds of millions of dollars in insurance proceeds.  I have tried insurance coverage cases, engaged in robust discovery and motion practice related to insurance disputes, and negotiated complex claims through mediations involving multiple parties and insurers.  I also have supervised teams of associates and paraprofessionals on large and complex insurance recovery matters.  Further, I have written extensively about, and lectured on, insurance coverage issues.

4.      As outlined below, I have reviewed the substantial pleadings and procedural history in this matter.  I also have reviewed the legal invoices that were rendered by counsel for Defendant/Third Party Plaintiff Aker Kvaerner Pharmaceuticals, Inc. ("Aker"), which document in detail and by task the professional services provided.  Drawing from my own personal experiences in rendering legal services, charging market standard hourly rates, and observing industry custom within the prevailing market, i.e., Northern New Jersey, I am able to provide an independent and informed opinion about the reasonableness and necessity of the attorneys' fees and expenses that generally are incurred to litigate complex insurance coverage disputes and that are routinely paid by companies involved in such disputes.  In addition, based on my review of

all of the pleadings, motions, legal invoices submitted in this matter, and the legal experience of the attorneys and paraprofessionals providing services in this matter, I am able to provide an independent opinion that the attorneys' fees and expenses incurred by Aker in this matter were reasonable and necessary.

5.      Based on my review of the materials provided, I understand that this matter arose from an accident on a construction site at a manufacturing facility.  Aker, along with several other parties, were on site at the time of the accident to perform construction work.  The interrelationship between the parties was set forth in a series of contracts that included both indemnification and insurance requirements.  Two of the parties, Epic Interiors LLC ("Epic") and Advantage Buildings & Exterior, Inc. ("Advantage"), were contractually obligated to provide both additional insurance coverage and indemnification to Aker.  Counsel for Aker was tasked with enforcing those contractual rights against both Epic and Advantage as well as their respective insurers.

6.      The issues presented in the litigation were complex and required a deep knowledge and understanding of insurance coverage, which is a specialty practice area.  In addition, Aker faced aggressive adversaries that engaged in protracted discovery and serial motion practice to challenge and re-challenge orders from the Court which upheld and enforced Aker's rights to indemnification and insurance coverage.  Much of Aker's efforts to pursue insurance coverage and indemnification from Epic, Advantage, and their insurers involved common factual and legal issues resulting in an overlapping benefit for the time that was spent pursuing coverage and indemnification from Epic, Advantage, and their insurers.  In my experience, overlapping benefits for work effort that requires the use of a best efforts allocation

model is typical when a policyholder is pursuing insurance coverage and indemnification from multiple parties.

7.      The hourly rates charged by counsel for Aker were reasonable.  In Northern New Jersey, corporate policyholders often pay hourly rates in the range of $500 – $800 for partners and $300 – $525 for associates for the type of legal services that rendered by counsel for Aker in this matter.  My knowledge base for this range is drawn from my personal experience of being engaged by clients to handle such matters at such rates; having represented a successful claimant and recovered the fees that my firm incurred within those hourly rate ranges; having gathered hourly rate data from my peers to support fee application motions; and having reviewed peer monitor survey data for firms of similar size, scope, and specialty.  Here, the partner rate for the legal services provided was "locked" at $450 per hour for the vast majority of the ten year period of litigation that took place and associates rate was similarly "locked" in the range of $300 – 350 per hour for much of the duration of the case, both of which are below prevailing market rates in the Northern New Jersey market.  In my experience, it is uncommon for one set of hourly rates to be charged for a protracted litigation that entails more than a decade of legal work.

8.      The attorneys' fees and expenses charged were reasonable in relation to the result obtained.  Here, a total of approximately $1.4 million was incurred over a more than 10 year period to secure (a) coverage under MCC's and Zurich's policies (with a cumulative total indemnity coverage limit of $4 million) for Mr. Ownbey's multimillion dollar personal injury claims, (b) an "outside of limits" defense obligation from the two primary insurers for a serious workplace injury claim, and (c) legal determinations that both Epic and Advantage owed a contractual indemnification to Aker.  The time and level of effort expended by counsel for Aker to obtain these successful outcomes is commensurate with the work product that a skilled and

knowledgeable insurance coverage litigator in Northern New Jersey would spend to complete such tasks.

9.      I have also reviewed the hours and fees charged for the various tasks/phases of services performed by Aker's counsel, which are reflected in tables included with Aker's fee application that summarize the time keepers, hours and fees charged by the primary tasks undertaken, including written discovery, deposition discovery, preparation of pretrial orders, motion practice, mediations, etc.  The time and level of effort expended by Aker's counsel to perform each of these major phases of services is also commensurate with the time and effort a skilled and knowledgeable insurance coverage litigator in Northern New Jersey would spend to complete such tasks and generate the corresponding work product.

10.      The work performed in January 2017 by counsel for Aker is a strong example of the reasonableness and necessity of the services provided in this matter.  According to the time recorded for that month, counsel prepared a motion for partial summary judgment against Zurich and responded to a summary judgment motion filed against Aker by Zurich.  Those motions required the preparation of: (a) a moving and opposing memoranda of law; (b) a statement of undisputed material facts and responses to Zurich's statement of undisputed material facts (which had been accompanied by 36 separate record exhibits); (c) identification and compilation of factual record (documents and deposition testimony) in support of Aker's statement of undisputed material facts and responses to Zurich, totaling 16 separate record exhibits; and (d) certifications from attorneys for the factual record.  The motions also required counsel to conduct legal research to support, and counter, the arguments made in the summary judgment briefs.  All of those legal services were performed by two attorneys and a paraprofessional at a total cost of $53,385.00 and a total of 171.10 hours recorded as follows:

| Ronald J. Chleboski, Jr. (Partner) | 71.10 hours |
| Denise Sullivan (Associate) | 63.90 hours |
| Roberta Cramer (Paraprofessional) | 36.10 hours |

The distribution of work among these professionals is commensurate with the manner in which I staff matters. The amount of time expended is within the range of time that I, and my teams, have expended to prepare and respond to summary judgment motions involving similar issues and work effort.

11. In the same vein, I have reviewed the entries that were recorded for the time and effort expanded to prepare for and take depositions of MCC witnesses. Aker's counsel expended a total of 205 hours preparing and traveling for and taking the depositions of six MCC witnesses. Given the magnitude of written discovery that was exchanged, the complexity of the interrelated factual issues concerning Aker's insurance coverage claim against MCC and its contractual indemnity claims against MCC's insured, Advantage, it was reasonable and necessary for counsel to incur approximately 200 total hours to complete such services. Further, consistent with the custom and practice that I, and my peers, have employed on coverage litigation matters like the one at issue, counsel distributed the work flow among partners, associates and paraprofessionals in a reasonable and appropriate manner.

12. Based upon my review, personal knowledge, and experience with insurance coverage litigations, I conclude that the rates charged by counsel for Aker in connection with this matter were reasonable and well within the prevailing market rate that is customarily charged in Northern New Jersey for representation of corporate policyholders in insurance coverage litigation based on each attorneys' experience, reputation, and ability. Similarly, based upon my review, personal knowledge, and experience with insurance coverage litigations, I conclude that

the tasks performed and the time expended by counsel for Aker in this declaratory judgment action was also reasonable.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated:  August 14, 2019                    By:  /s/ Lynda A. Bennett
                                                Lynda A. Bennett

# EXHIBIT A





# Lynda A. Bennett

Partner

Chair, Insurance Recovery Group; Member, Executive Board

New York
New Jersey
T: +1 973.597.6338 | F: +1 973.597.6339
lbennett@lowenstein.com

Corporate policyholders rely on Lynda to aggressively litigate, negotiate, and resolve complicated disputes with insurers. To date, she has secured hundreds of millions of dollars in insurance recoveries for her clients.

With more than 25 years of commercial litigation experience, Lynda understands that it is generally not in the best interests of corporate policyholders to engage in protracted and costly litigation, especially when doing so may disrupt business and lead to unwelcome public attention. Her goal is to assess and resolve disputes in a manner that achieves successful outcomes for her clients while minimizing interruptions to business as usual. However, if litigation becomes necessary, she has a keen sense of strategy and will exert maximum leverage to resolve claims as quickly as possible.

Lynda has obtained significant recoveries for clients in environmental, asbestos, construction defect, mass tort, product liability, D&O, and professional liability cases. She also counsels clients with respect to contractual insurance requirements, new insurance products (such as cyber insurance), innovative risk management tools, and insurance program assessment. Working with the firm's transactional lawyers, Lynda regularly advises strategic acquirers and private equity funds regarding insurance coverage issues that arise in acquisition and investment transactions and she has a deep network in the reps and warranties insurance space that is an asset for any deal.

Lynda has chaired the Insurance Recovery group since 2011 and is a member of the firm's Executive Board and Compensation Committee. She previously served on the firm's Operating Committee and Recruiting Committee.

Lynda is strongly committed to advancing the role of women in the legal profession. She is a founder of the firm's Women's Initiative Network, is active in legal industry women's groups, and serves as a board member and past president of the New Jersey Women Lawyers Association. She is also an active participant in a firmwide initiative to help junior attorneys develop their networking, business development, and branding skills.

## EXPERIENCE

> Represent Mist Pharmaceuticals, LLC in an ongoing coverage litigation against Berkley Insurance Company (Berkley). We secured partial summary judgment reestablishing Berkley's duty to defend Mist in an investor lawsuit pending in Delaware. Mist was awarded the full amount of the firm's litigation fees and costs.

> Achieved trial and appellate court victories in New York state court for Sterling Infosystems,Inc., a provider of background checks and consumer reports. As a result of these victories, Sterling's professional liability insurer has to cover Sterling, up to its full $5 million policy limit, for several putative class action lawsuits alleging violations of the Fair Credit Reporting Act. In addition, the insurer was ordered to reimburse Sterling for the attorneys' fees and expenses incurred for the coverage litigation.

> Represented a real estate developer who purchased eight tracts of land from Consolidated Rail Corporation. Shortly after the real estate transaction closed, the developer's title to the properties was challenged by the municipality and several public interest groups. Our Insurance Recovery group secured the insurer's defense obligation. In addition, an appellate court affirmed a $1.6M fee award for past defense costs, representing more than 95 percent of the requested fees. The appellate court also granted our cross-appeal on the right to recover coverage litigation fees and costs and the right to pursue pre-judgment interest.

> Acted as coverage counsel in a large construction defect litigation involving a multimillion-dollar waterfront development in New Jersey, securing a combined eight-figure insurance recovery from a variety of insurers.

> Represented a large manufacturer in connection with two environmental claims under a pollution legal liability insurance policy.

> Represented a health care company to resolve a dispute with its employment practices insurer and the insurer's "panel" defense counsel. The dispute involved tripartite relationship conflict issues, bad faith, and a "noncooperation" defense asserted by the insurer.

> Represented a developer in connection with a multimillion-dollar title insurance dispute, securing partial summary judgment on the duty to defend and continuing to pursue indemnity coverage, bad faith, and consumer fraud claims.

> Acts as coverage counsel for several manufacturing and supply companies, providing litigation and counseling assistance regarding claims disputed by various insurers that sold insurance policies to the companies. Also provides counseling advice with respect to managing insurance and indemnity risks in master services and specific project contracts.

> Represented a chemical supply company in connection with insurance coverage for nationwide toxic tort litigation. Secured summary judgment and declaratory relief that resulted

in 100 percent defense and indemnity coverage for claims.

# HONORS & AWARDS

> **Crain's: Notable Women in Law - New York (2019)**
Recognizing women lawyers who have impacted New York City through their distinguished careers and exceptional civic and philanthropic activities

> **Top 100: New Jersey Super Lawyers (2019)**

> **Top 50 Women: New Jersey Super Lawyers (2019)**

> **New Jersey Super Lawyers (2007-2019)**
Recognized for work in Insurance Coverage and Class Action/Mass Torts: Defense

> **Chambers USA: America's Leading Lawyers for Business (2013-2019)**
Ranked in Band 1 for Insurance Litigation

> **American Bar Foundation: Fellow (2018)**
Nominated to a global honorary society of lawyers, judges, law faculty, and legal scholars who have demonstrated outstanding leadership in the profession and service to society. Membership is limited to one percent of the lawyers admitted to practice in the United States and its territories.

> **The Best Lawyers in America (2006-2019)**
Recognized in the Insurance Law section.

> **NJBIZ: Best 50 Women in Business (2016)**

> **The New Jersey Institute for Continuing Legal Education: Distinguished Service Award (2014)**

> **New Jersey Women Lawyers Association Women's Initiative and Leaders in Law (WILL) Platinum Award (2013)**

> **New Jersey Commission on Professionalism in the Law: Professional Lawyer of the Year Award (2008)**

# NEWS & INSIGHTS

## Publications

> February 12, 2019
**"Private Equity Firm Secures $87 Million of Coverage From Its Own Insurers for a Portfolio Company Liability,"** *Insurance Recovery Client Alert*
Lynda A. Bennett

> February 2019
**"Four Insurance Pitfalls That Every Bankruptcy Lawyer Should Avoid,"** *New Jersey Lawyer*
Lynda A. Bennett, Eric Jesse

> January 10, 2019
**"Securing Indemnification and Additional Insurance Coverage Requires Careful Drafting,"** *Insurance Recovery and Real Estate Client Alert*
Lynda A. Bennett, Edward J. "Ted" Hunter

> December 12, 2017
**"IoT coverage: A patchwork quilt with potential holes,"** *Business Insurance*
Lynda A. Bennett

> September 13, 2017
**"Maximizing Insurance Recovery for Hurricane Harvey and Irma Losses,"** *Insurance Recovery Group Client Alert*
Lynda A. Bennett, Eric Jesse

> May 9, 2017
**"Advice to Cyber Insurance Buyers: You Are Not Alone,"** *CFO*
Lynda A. Bennett

> March 1, 2017
**"How to Get Noticed as a Junior Associate Within Your Law Firm,"** *Reuters Westlaw's Legal Executive Institute*
Lynda A. Bennett

> February 16, 2017
**"Three Myths Holding Women Back From Career Advancement,"** *Reuters Westlaw's Legal Executive Institute*
Lynda A. Bennett

> January 23, 2017
**"Women Helping Women: Paying It Forward Is Priceless,"** *Reuters Westlaw's Legal Executive Institute*

Case 2:07-cv-02190-KSH-CLW    Document 637-10    Filed 08/14/19    Page 11 of 14
PageID: 23550

Lynda A. Bennett

> January 17, 2017
**"Insurance 101 for Tech Companies,"** *Tech GC Blog*
Lynda A. Bennett, Eric Jesse

> December 5, 2016
**"California Decision Shows That Companies May Obtain Insurance Coverage for Wage and Hour Claims,"** *Insurance Recovery Group Client Alert*
Lynda A. Bennett, Joseph M. Saka, Courtney E. Alvarez

> September 28, 2016
**"The Evolving Career Path of a Woman Lawyer in Big Law (Perspective),"** *Bloomberg Big Law*
Lynda A. Bennett

> September 14, 2016
**"Five Keys to Understanding and Securing Cyber Insurance,"** *FC&S Legal*
Lynda A. Bennett

> September 13, 2016
**"Overcoming My Own Bias of Women's Groups at Law Firms (Perspective),"** *Bloomberg Big Law*
Lynda A. Bennett

> August 24, 2016
**"Three Keys to Establishing and Growing a Successful Mentoring Relationship,"** *Thomson Reuters Legal Executive Institute*
Lynda A. Bennett

> August 8, 2016
**"National Trend Confirming Insurance Coverage for General Contractors in Construction Defect Lawsuits Continues,"** *Insurance Recovery Group Client Alert*
Lynda A. Bennett, Eric Jesse

> August 2, 2016
**"4 Ways to Fight Back When the Insurance Company Denies Coverage,"** *Corporate Counsel*
Lynda A. Bennett

> May 23, 2016
**"Beware of Coverage Gaps for Social Engineering Losses,"** *Risk Management Magazine*
Lynda A. Bennett

> Fourth Quarter 2015
**"Sidestepping Cyber Liability: Three Best Practices,"** *Corporate Board Member*
Lynda A. Bennett

> Second Quarter 2015
**"Your D&O Coverage: Do You Have What You Expect … and Need?,"** *Directors & Boards Magazine*
Lynda A. Bennett

> April 13, 2015
**"Cybersecurity Risk Management is Complex,"** *Society for Human Resource Management*
Lynda A. Bennett

> March 30, 2015
**"Cyber Insurance Policies: Are They Worth the Money?,"** *CFO*
Lynda A. Bennett

> February 23, 2015
**"Cyber Security and Insurance Coverage Protection: The Perfect Time for an Audit,"** *FC&S Legal: The Insurance Coverage Law Information Center*
Lynda A. Bennett

> February 6, 2015
**"What Every General Counsel and Law Department Needs to Know About Employed Lawyers Coverage,"** *Inside Counsel*
Lynda A. Bennett

> January 15, 2015
**"Critical Insurance Considerations for Financially Distressed Companies,"** *Bloomberg BNA, Bankruptcy Law Reporter*
Lynda A. Bennett

> November 6, 2014
**"Are Your M&A Deals Creating Gaps in Insurance Coverage?,"** *The Deal Pipeline*
Lynda A. Bennett, Eric Jesse

> March 3, 2014

**"Insurance Coverage for Statutory Class Action Claims Involving Privacy,"** *FC&S Legal: The Insurance Coverage Law Information Center*
Lynda A. Bennett

## Press Mentions

> April 25, 2019

Lowenstein Sandler is highlighted in ***Bloomberg Law – Big Law Business*** for its role in recovering full coverage litigation fees in an ongoing suit against its client's insurer. The Lowenstein team included **Lynda A. Bennett** and **Eric Jesse.**

> January 1, 2019

**Lynda A. Bennett** comments on the *Vanderbilt Co v. Hartford* insurance case regarding coverage for asbestos injury claims, noting her optimism that the Connecticut Supreme Court justices will affirm the appellate panel's recognition of the unavailability rule, which maximizes coverage available to policyholders facing asbestos claims, as published in ***Law360***. Bennett states, "What carriers are trying to do is expand the allocation period to spread it into more policy years, in order to artificially block full recovery under the policies that were purchased." She further states, "If the allocation period includes years in which the policyholders could not purchase insurance, the practical implication is that the insurers that did take on that risk will take on a smaller share."

> November 5-12; December 13-19, 2018

**MarketWatch**, **GlobeNewswire**, **TenLinks**, **StreetInsider.com**, **Yahoo! Finance**, **Digital Engineering**, *Global Legal Chronicle,* and **Crain's Detroit Business** note Lowenstein Sandler as counsel to Altair Engineering Inc. (Nasdaq: ALTR) in its $176 million acquisition of Datawatch Corporation (Nasdaq: DWCH). (Lowenstein deal team: **Peter H. Ehrenberg**, **Michael J. Mueller**, **Elizabeth A. Mandle**, **Justin Gindi**, **Colin J. Kirby**, **Valeska Pederson Hintz**, **Kate Basmagian**, **Lauren E. Killeen**, **Darren Goodman**, **Megan Monson**, **Brian A. Silikovitz**, **Sophia Mokotoff**, **Mark P. Kesslen**, **Manali Joglekar**, **Leah Satlin**, **Jeffrey Blumenfeld**, **Jack Sidorov**, **Jeffrey M. Shapiro**, **Lynda A. Bennett**, **Eric Jesse**, **Lowell A. Citron**, **Lauren M. Troeller**, and **Erica Perlmutter**.) **View Lowenstein's news announcement about this transaction**.

> July 30, 2018

**The PE Hub Network** and **Mergers & Acquisitions** note Lowenstein Sandler as counsel to **NexPhase Capital, LP** in its equity stake investment in **Brandt Information Services, LLC**.

> June 29, 2018

*Law360* quotes **Lynda A. Bennett**, who critiques a strongly worded dissenting opinion in a recent appellate court ruling upholding the "unavailability rule" which protects policyholders from having to pay for costs attributed to claims arising during a time period when insurance coverage was not available for a particular risk. *(subscription required to access article)*

> June 28, 2018

*Law360* quotes **Lynda A. Bennett** regarding the potential approval of the New Jersey Insurance Fair Conduct Act, who stresses how the bill which would "put bad-faith claims back on the table in cases where insurers' claims-handling conduct really needs to be examined" would benefit policyholders. *(subscription required to access article)*

> October 17, 2017

**Lynda A. Bennett** comments in **Law360** on how a recent New Jersey appeals court decision affects the "continuous trigger" theory for insurance in construction defect liability claims.

> August 25, 2017

**Lynda A. Bennett** comments in **Law360** on how a recent Third Circuit decision limiting the ability of policyholders to keep coverage disputes out of federal court may lead to inconsistent rulings by federal and state courts on insurance coverage issues.

> May 2017

In ***Metropolitan Corporate Counsel***, **Lynda A. Bennett** shares her advice for women overcoming challenges to lead in the law.

> March 16, 2017

In **CSO Online**, **Lynda Bennett** comments on the importance of policyholders of carefully reviewing their cyber insurance policies.

> March 7, 2017

**Lynda Bennett** comments in **Law360** on how to allocate responsibility for a loss when coverage is no longer available to insure a risk.

> February 17, 2017

In **Law360**, **Lynda Bennett** and **Eric Jesse** are mentioned for their representation of a food equipment manufacturer in its insurance broker malpractice lawsuit.

> February 15, 2017

In **Reuters Westlaw's Legal Executive Institute**, **Lynda Bennett** is highlighted for writing the first piece in Thomson Reuter's Transforming Women's Leadership in the Law initiative's new series "Stories of Women Helping Women."

> December 14, 2016

**Lynda Bennett** comments in **Law360** on a New Jersey Supreme Court decision that will address insurance allocation issues associated with long-tail asbestos liabilities.

> September 9, 2016

In **Law360**, **Lynda Bennett** comments on the implications of a New York court's ruling on allocation for long-tail liabilities.

> August 4, 2016

**Lynda Bennett** comments in **Law 360** on a recent Supreme Court of New Jersey decision in favor of the insureds based on the viability of the subcontractor exception.

> July 19, 2016

**Lynda Bennett** is quoted in **Hotel Management Magazine** on the importance of negotiating terms and conditions for cyber insurance policies.

> July 15, 2016

**Lynda Bennett** comments in **Law360** regarding the Appellate Division's recent decision addressing insurance coverage for product liability claims and the applicable standard for the impaired property exclusion.

> March 21, 2016

**Lynda Bennett** comments in **Insurance Journal** on the risk of cyber insurance policies.

> March 14, 2016

**Lynda Bennett**, one of **NJBIZ**'s 2016 Best 50 Women in Business honorees, shares her advice for success in the workplace.

> March 4, 2016

**Lynda Bennett** comments in **Insurance Journal** on the "volatile" nature of cyber insurance policies and how the market will change as cyber coverage evolves.

> March 1, 2016

**Lynda Bennett** comments in **Risk & Insurance Magazine** about the complexities of today's cyber policies and the challenge of selecting the "right" one.

> February 11, 2016

**Lynda Bennett** comments in **Law360** on the impact of a New Jersey Supreme Court decision assessing an insurer's late notice defense.

> January 28, 2016

**Lynda Bennett** is quoted in **Reuters** regarding the current state of the cyber insurance market and the impact of recent breaches.

> January 26, 2016

**Lynda Bennett** comments in **Law360** regarding the risk of cyber liability for product manufacturers requiring consumers to submit sensitive information.

> November 5, 2015

**Lynda Bennett** comments in **Law360** regarding the New Jersey Supreme Court's grant of certification to decide issues impacting the scope of insurance coverage available for construction defect claims.

> October 27, 2015

**Lynda Bennett** is quoted in **Law360** regarding the Third Circuit's ruling that impacts a policyholder's right to defense when vague allegations are made in complaints.

> July 29, 2015

**Law360** highlights the New York Supreme Court's decision in favor of our client in two federal lawsuits seeking damages under the Fair Credit Reporting Act (FCRA). Led by **Lynda Bennett** and **Eric Jesse**, Lowenstein Sandler represented our client in a dispute involving insurance coverage for statutory damages available under the FCRA. The Insurance Recovery group secured a summary judgment victory for the client, who is now entitled to recovery of the costs that were incurred in the coverage litigation.

> July 9, 2015

**Lynda Bennett** comments in **CSO Online** on the importance of reading the fine print in cyber insurance policies.

> June 15, 2015

**Lynda Bennett** is featured in **Law360**, discussing four battleground issues that insurance lawyers are tracking in the Garden State.

> May 7, 2015

**Lynda Bennett** comments in **Law360** regarding the New Jersey Supreme Court's decision to award attorneys' fees to a plaintiff who went after a defendant's insurer after the defendant was cleared. According to Lynda, the opinion provides a clear warning for insurers to think twice before avoiding a defense obligation due to coverage litigation fees.

> May 6, 2015

**Lynda Bennett** is featured in **The Wall Street Journal**, discussing how increased attention from regulators is changing the cyber insurance market for insurers and their customers.

> May 1, 2015

**Lynda A. Bennett** is featured in **Security Magazine** regarding cyber insurance and addresses important questions surrounding the industry.

> April 1, 2015

**Lynda Bennett** is quoted in *Millionaire Corner* regarding the early stages of evaluating the claims history associated with cyber insurance policies.

> February 27, 2015

In **Law360**, **Lynda Bennett** comments on the Supreme Court of New Jersey's refusal to alter the judicial standard around bad faith claims in insurance coverage disputes and how the decision prevents policyholders from acquiring important information that reflects the insurers' decision-making processes.

> September 5, 2014

In **Law360**, **Lynda Bennett** comments on the New Jersey Supreme Court's review of the bad faith liability standard imposed against insurers, noting that early discovery provides policyholders with the best leverage to pursue insurer bad faith.

> August 5, 2014

In **Law360**, **Lynda Bennett** is highlighted as a member of Lowenstein Sandler's Executive Board and the chair of the firm's insurance practice. Having women represent the firm in a number of notable positions led to the firm being listed among the 50 Best Law Firms for Women.

## SPEAKING ENGAGEMENTS

> Panelist, **A Roundtable Discussion of Executive Protection Through Risk Management and Insurance Coverage,** Iron Cove and Lowenstein Sandler, New York, NY, April 16, 2019

> Panelist, **Cyber Insurance Webinar on 2019 Audits and Initiatives ,** Greater New York Hospital Association (GNYHA), March 5, 2019

> Panelist, **Natural Resource Damage Claims: A Renewed and Significant Risk for New Jersey Corporations,** Lowenstein Sandler, Roseland, NJ, November 28, 2018

> Moderator and Panelist, **Cyber-Insurance in 2019 and Beyond: Five Major Misconceptions About Where To Find Insurance Coverage for Cyber Risks, and Where Key Coverage Gaps May Exist,** NJICLE, November 1, 2018

> Speaker, **Lowenstein Sandler and ACC New Jersey's 4th Annual Cyber Day,** Lowenstein Sandler; ACC New Jersey, Roseland, New Jersey, October 10, 2018

> Moderator, **Women, Influence & Power in Law: The Original Global Forum Facilitating Women-to-Women Exchange on Leadership and Legal Issues,** Corporate Counsel, Washington, DC, October 4-5, 2018

> Speaker, **Five Misconceptions About Where To Find Insurance Coverage for Cyber Risks and Where Coverage Gaps May Exist,** Lowenstein Sandler's New York Office, April 26, 2018

> Moderator, **Women, Influence & Power in Law Conference,** Washington, D.C., October 10-12, 2017

> Speaker, **A Really Interesting & Practical Discussion About Cyberinsurance … No, Seriously,** TechGC Cyberinsurance Webinar, October 4, 2017

> Speaker, **Emerging Trends in Cyber Insurance Under Traditional and Standalone Policies,** ACC - New Jersey and Lowenstein Sandler's Cyber Day, September 27, 2017

> Speaker, **Jamison Risk Services Cyber Security Panel,** Jamison Risk Services, May 11, 2017

> Speaker, **Cyber Insurance for Real Estate: Are You Covered for Cyber Security Risks?,** ACREL Insurance Committee Webinar, February 14, 2017

> Speaker, **A Really Interesting and Practical Discussion About Insurance … No, Seriously,** TechGC's Winter Meeting, December 6, 2016

## EDUCATION

> Valparaiso University School of Law (J.D. 1994), magna cum laude; Executive Editor, *Valparaiso Law Review*

> Susquehanna University (B.A. 1991), cum laude

## ADMISSIONS

> New York

> New Jersey

© 2019 Lowenstein Sandler LLP