**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SHELBY OWNBEY AND JOYCE OWNBEY, h/w

*Plaintiffs,*

v.

AKER KVAERNER PHARMACEUTICALS, INC., **et al.**

*Defendants.*

CIVIL ACTION No. 2:07-cv-02190-KSH-CLW

---

**AKER KVAERNER PHARMACEUTICALS, INC.**

Third Party Plaintiff,

v.

**ADVANTAGE BUILDINGS & EXTERIOR, INC., MID-CONTINENT CASUALTY CO., ZURICH AMERICAN INSURANCE COMPANY, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA.,**

Third Party Defendants.

---

**SUPPLEMENTAL DECLARATION OF RONALD J. CHLEBOSKI, JR. IN SUPPORT OF AKER'S MOTION FOR AN AWARD OF ATTORNEY FEES**

I, RONALD J. CHLEBOSKI, JR., declare under penalty of perjury that the following is true and correct to the best of my personal knowledge:

1.  I am an attorney licensed to practice in Pennsylvania and have been admitted <u>pro hac vice</u> as counsel for Aker Kvaerner

Pharmaceuticals, Inc. ("Aker") in this case.  I am a partner of Dingess, Foster, Luciana, Davidson & Chleboski, LLP ("DFL Legal") and was previously a partner of K&L Gates LLP ("K&L Gates").

2.    In accordance with the Court's August 13, 2021 Order (DE 692), I offer this Supplemental Declaration in further support of Aker's Motion for an Award of Attorney Fees (DE 637) ("Fee Application").

**A.    UPDATE TO AKER'S FEE/EXPENSE CLAIM (POST-SEPTEMBER 2019)**

3.    In its June 30, 2021 Opinion and Order (DE 672 & 673)("Order"), the Court re-affirmed and (again) definitively ruled that (a) Aker prevailed on its additional insured coverage claims and contractual indemnity claims against Mid-Continent Casualty Co. ("MCC"), Zurich American Insurance Company ("Zurich"), Advantage Building & Exterior, Inc. ("Advantage"), and Epic Exteriors, LLC ("Epic") and (b) as a result, Aker is entitled to recover all reasonable coverage counsel fees and expenses it incurred prosecuting its claims against these defendants.

4.    In support of its Fee Application (which was fully briefed as of November 2019), Aker submitted to the Court and sought an award of (most, but not all) coverage counsel fees and expenses it incurred from the start of coverage counsel's engagement (September 2008) through September 30, 2019.  Aker

2

also reserved the right to supplement its fee/expense claim for fees/expenses incurred through the conclusion of this case.  As allowed by the Court's August 13, 2021 Order, Five Star hereby updates and amends its Fee Application to seek coverage counsel fees/expenses incurred through the date of this Supplemental Declaration, i.e., August 27, 2021.

5.    As demonstrated below, Aker incurred a total of $1,765,489.58 in fees and expenses in this lawsuit from the commencement of the coverage case in September 2008 through August 27, 2021.  As detailed in the updated fee/expense information attached hereto, Aker is not seeking to recover $85,287.02 in fees and expenses it incurred in this lawsuit, which include fees/expenses it incurred relative to its claims against former party National Union and cross claims by ImClone. Hence, for fees/expenses incurred through August 27, 2021, Aker seeks judgment in the total amount of $1,680,202.56 against the various defendants.

6.    Aker seeks judgment for sole liability and joint and several liability against the various defendants in the amounts specified in the "Summary of Aker's Fee/Expense Claim", attached as **Exhibit 1** (which supersedes and replaces DE 664-1).  Aker therefore respectfully requests that the Court enter final judgment in favor of Aker and against the defendants in the form of proposed Final Order attached as **Exhibit 2**.

7.    Aker incurred coverage counsel fees/expenses through retention of three law firms, namely K&L Gates, DFL Legal and Methfessel & Werbel, P.C. ("M&W").  K&L Gates served as Aker's lead counsel prosecuting Aker's insurance coverage and contractual indemnity claims between September 2008 and February 2010, and DFL Legal has served in that capacity from March 2010 through the present.  M&W has served as Aker's local counsel from November 2013 to the present.

8.    The total coverage counsel fees/expenses that Aker seeks (as reflected in Exhibit 1) are thus comprised of fees/expenses incurred through K&L Gates, DFL Legal and M&W, which are summarized in **Exhibit 3** hereto.  The fees/expenses that Aker incurred through K&L Gates and DFL Legal are discussed and substantiated in Paragraphs 9 through 19 and the Exhibits cited therein.  The fees/expenses that Aker incurred through M&W are discussed and substantiated in the Certification of Marc L. Dembling, dated August 14, 2019 (DE 637-9) and the Certification of Mr. Dembling, dated August 27, 2021, filed herewith.

9.    In support of its initial Fee Application, Aker filed extensive and detailed records of the legal costs incurred through K&L Gates and DFL Legal, in the form of spreadsheets containing all K&L Gates and DFL Legal time and expense entries reflected in all invoices for services rendered through January 31, 2019, and detailed allocations of all fees and expenses

4

among MCC, Zurich, and their respective insureds, Advantage and Epic.  [See DE 637-4, 637-5; see also DE 637-1, at 3 n.1, n.3]. Aker subsequently updated these detailed fee allocation spreadsheets by way of my Declarations dated November 6, 2019 and January 31, 2020.  [See DE 658-2, 658-3, 664-3 & 664-4].

10.  Submitted herewith as **Exhibit 4** and **Exhibit 5** are updated versions of detailed spreadsheets showing the same detailed fee and expense information for services rendered by K&L Gates and DFL Legal during the period from September 2008 through August 27, 2021.  Exhibit 4 is Aker's detailed fee/expense allocation spreadsheets, which reflect allocations of fees/expenses among the defendants (and to "NC", i.e., Not Claiming) by dollar amounts, and it replaces and supersedes the prior versions of those spreadsheets, namely DE 637-4, 658-2 and 664-3.  Exhibit 5 is Aker's detailed fee/expense allocation spreadsheets, which reflect allocations of fees by hours, and it replaces and supersedes the prior versions of those spreadsheets found at DE 637-5, 658-3 and 664-4.

11.  In support of its Fee Application, Aker also filed an Appendix explaining its use of Task Codes and Task Groupings to aid in understanding its Fee Application and the costs incurred in connection with the various phases of this lawsuit.  [See DE 637-1, at 3 n.1; DE 637-2].  Submitted herewith as **Exhibit 6** is an updated version of that Appendix, which includes one

additional Task Code (i.e., "32") and one additional Task Grouping (i.e., "S").

12. As explained in our previous filings, I created and oversaw implementation of the system of Task Codes and Task Groupings and offer the following clarifying comments. As outlined in Exhibit 6, I created 35 Task Codes for specific activities that coverage counsel (K&L Gates and DFL Legal) undertook. The Task Groupings are simply logical groupings of related Task Codes. Again, I implemented the Task Codes and Task Groupings so we could prepare compilations of approximate hours and dollar amounts incurred for the various groups of related tasks that comprise the 19 different Task Groupings and provide same to the Court to assist the Court in understanding and evaluating Aker's Fee Application.

13. The Task Codes and Task Groupings are independent of and separate from the detailed allocations of Aker's fees/expenses, and the fee/expense claim amounts Aker seeks against the defendants are based solely upon the detailed allocations. [See DE 637-1, at 33-36]. Thus, the Task Codes and Task Groupings should only be used for guidance in evaluating Aker's fee claims, whereas the allocations spell out precisely the content and amounts of Aker's fee/expense claim.

14. DFL Legal engaged two consultants to assist it in assessing and preparing Aker's Fee Application: (1) LitCon

Group, LLC ("LitCon"), a litigation accounting firm; and (2) Lynda A. Bennett of Lowenstein Sandler LLP.  Fees/expenses of LitCon and Ms. Bennett are thus included as expenses in DFL Legal's invoices.

15.  DFL Legal and LitCon jointly developed, and LitCon performed the detailed work required for the master Excel spreadsheet template that was used to import/compile all fee and expense data from K&L Gates and DFL Legal invoices, perform allocation calculations, and generate the fee/expense work product and attachments hereto.  Aker previously filed with the Court sample extracts from the master Excel spreadsheet template that is the core data compilation of Aker's fee/expense claim. [See DE 658-4].  DFL Legal and LitCon also jointly developed, and LitCon executed the various fee/expense spreadsheets, tables, charts, and pie charts that are attached hereto.

16.  LitCon's invoices for services rendered in 2019 were previously filed at DE 658-5.  LitCon's invoice for services rendered in August 2021 in connection with this Supplemental Declaration is attached hereto as **Exhibit 7**.

17.  Ms. Bennett reviewed, analyzed and provided her professional opinions regarding the appropriateness and reasonableness of the coverage counsel fees and expenses that Aker seeks in its Fee Application [see DE 637-10].  Invoices for

7

the services that Ms. Bennett provided were previously filed at DE 658-6.

18.  As I indicated in my Declaration dated January 31, 2020 (DE 664), DFL Legal did _not_ charge Aker for any fees incurred in connection with preparing that Declaration or the accompanying corrected fee/expense data and work product.  DFL Legal instead wrote off all such fees, which were incurred between November 2019 and January 2020.  As shown in the detailed fee allocation spreadsheets for those months (see Exhibits 4 and 5 hereto), and the "Summary of Fees Not Charged" (attached hereto as **Exhibit 8**), DFL Legal wrote off the 57.5 hours and $19,095.00 in fees it incurred in connection with preparing Aker's corrective filing DE 664 (including all exhibits thereto).

19.  As indicated in my prior Supplemental Declaration (DE 664), and as ordered by the Court (see DE 692), Aker has _not_ included in this supplemental fee/expense submission _any_ fees or expenses that were incurred in connection with corrective filing DE 664.  As noted above, DFL Legal wrote off all the fees it incurred.  Also, as shown in the detailed expense allocation spreadsheet for DFL Legal's January 2020 invoice (see Exhibits 4 and 5), Aker allocated the $5,847.50 of LitCon costs incurred for the corrective filing to "NC" (i.e., Not Claiming), meaning such costs are not included in Aker's fee/expense claim.

8

**B.    FURTHER ANALYSIS OF AKER'S FEE CLAIM**

20.    As Aker has previously stated and as is apparent from a review of the invoice data submitted herewith, my partner Joseph L. Luciana, III and I supervised the representation of this matter at both K&L Gates and DFL Legal.  [See DE 637-1, at 9-10; Exhibits 4 & 5 hereto].  Mr. Luciana and I determined and executed the strategy, assisted where appropriate by non-partner attorneys (associates and contract attorneys) and non-attorney staff (paralegals, clerks, librarians, and summer associates). We were also responsible for reviewing, finalizing, approving and issuing invoices to Aker and for collecting the sums invoiced.  [See DE 664 ¶7].

21.    As demonstrated in Aker's prior Fee Application submissions, Aker maintains (contrary to the arguments presented by MCC/Advantage and Zurich/Epic) that the fees/expenses it seeks in its Fee Application were necessarily and reasonably incurred in connection with prosecuting its claims against MCC, Zurich, Advantage and Epic, and were reasonable in amount as to the fee rates charged, the hours spent and expenses/costs incurred.

22.    Attached hereto as **Exhibit 9** is a summary of the K&L Gates and DFL Legal timekeepers whose fees Aker seeks in its Fee Application and the hourly rates charged for such timekeepers,

9

as such varied over the 13-year duration of this lawsuit. Exhibit 9 supersedes and replaces DE 657-3.

23.   As this summary shows, DFL Legal has (with few exceptions) maintained its fee rates steady without increases since 2010.  The fee rates DFL Legal charged Aker starting in 2010 were the standard hourly rates that DFL Legal charged and collected from basically all of its clients at that time. Despite implementing multiple increases to its standard fee rates since 2010, and despite an engagement agreement that allowed for rate increases, DFL Legal did *not* increase the fee rates it charged Aker.

24.   Analyses of the K&L Gates and DFL Legal timekeepers' billings and billing rates are shown in the pie charts and tables attached as **Exhibit 10** (Hours by Fee Rate), **Exhibit 11** (Hours by Timekeeper) and **Exhibit 12** (Fees by Timekeeper). These charts and tables supersede and replace DE 658-7, and they include all K&L Gates and DFL Legal timekeepers hours and fees, including hours and fees allocated to NC (i.e., Not Claiming). These charts/tables demonstrate the following:

a.   All timekeepers together expended 4,882.5 hours and billed $1,586,344.89, for an average of $324.90 per hour.

b.   Partners (Mr. Luciana and I) expended 2,290.8 hours and billed $1,002,717.99, for an average of $437.71 per hour.

10

c.    Non-partner attorneys (associates and contract attorneys) expended 2,005.8 hours and billed $492,358.25, for an average of $245.47 per hour.

d.    Non-attorney staff expended 585.9 hours and billed $91,268.65, for an average of $155.78 per hour.

e.    Six timekeepers (myself, Mr. Luciana, K&L Gates associate Megan Smith Miller, K&L Gates/DFL paralegal Roberta A. Cramer, DFL Legal associate Victor A. Delnore, and DFL Legal contract attorney/associate Denise H. Sullivan) account for 84.2% of the total hours incurred.

25.    As demonstrated in Aker's Fee Application submissions, (a) the fee rates charged by Aker's coverage counsel are reasonable and indeed "below prevailing market rates in the Northern New Jersey market" [see, e.g., Certification of Ms. Bennett, DE 637-10 ¶¶ 7, 12] and (b) the hours spent were reasonable and "commensurate with the time and effort a skilled and knowledgeable insurance coverage litigator in Northern New Jersey would spend to complete such tasks and generate the corresponding work product." [See, e.g., id. ¶¶ 9, 8, 10-12].

Dated:    August 27, 2021

Ronald J. Chleboski, Jr.

11